UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                    Case No. 24-CR-240

DONTA E. BRADSHAW,

        Defendant.

---

## ORDER GRANTING MOTION TO SUPPRESS

---

      Donta E. Bradshaw is charged in an indictment with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The charge arises out of a traffic stop of the vehicle Bradshaw was driving in the early morning hours of November 24, 2024, in the City of Oshkosh, Wisconsin. A loaded Ruger 9 mm semi-automatic pistol was found under the driver's seat during a search of the vehicle conducted by Oshkosh Police Officer Cody Rukamp during the course of the stop. The case is before the court on Bradshaw's motion to suppress all evidence obtained as a result of that search on the ground that it was obtained in violation of Bradshaw's rights under the Fourth Amendment. While Bradshaw does not challenge the initial stop of the vehicle he was driving, he contends that the search was conducted without probable cause and that the firearm, as well as other evidence obtained in the search, including statements he made after his arrest, should therefore be suppressed.

      The court conducted an evidentiary hearing on Bradshaw's motion on February 20, and the record was supplemented with additional evidence on February 27, 2025. The hearing was continued on April 17, 2025, and is fully briefed. Now, for the reasons set forth below, Bradshaw's

motion will be granted. What follows are the Court's findings of fact, conclusions of law, and decision.

I.     FACTS

On Sunday, November 24, 2024, at 12:08 a.m., Oshkosh Police Officer Cody Rukamp, who had been with the Oshkosh Police Department for over eight years, was on routine patrol when he saw a multi-colored SUV with wholesale dealer license plates. Officer Rukamp had also been a Field Training Officer for the past four years. As a Field Training Officer, he was responsible for training new patrol officers as they were assigned to the patrol division from the training academy. Officer Rukamp realized that the dealer plates on the vehicle were being used improperly because the vehicle did not have the required information displayed on the window, i.e., mileage, make, model, etc., and it was being operated outside of normal business hours. Wis. Stat. § 341.47; Wis. Admin. Code § Trans 139.04. When he ran the plate, he received a response of "no vehicle associated." Officer Rukamp therefore decided to perform a traffic stop and activated his red and blue emergency lights.

The driver of the vehicle was Donta Bradshaw, who had previously been convicted of a crime punishable by more than a year in prison. Bradshaw pulled the vehicle, a 2008 Chevrolet Trailblazer, over to the side of the road, and Officer Rukamp approached on the driver's side. The driver's side window was open, and Officer Rukamp testified he immediately noticed the unmistakable odor of marijuana emanating from the vehicle. The back of the vehicle was filled with clothes, boxes, fishing poles, and other equipment. Dkt. No. 24 at 29:20–22. Officer Rukamp testified that the smell of marijuana was familiar to him because he encountered it "on a weekly basis, sometimes several times throughout the week." *Id.* at 8:05–06. Although he believed that he had probable cause and planned to eventually search the vehicle, Officer Rukamp decided not

2

to inform Bradshaw that he smelled marijuana at that time out of caution. He testified he had a previous experience in which a person whom he stopped for a traffic violation and immediately told he could smell marijuana became desperate and attempted to flee, resulting in Officer Rukamp being struck by the vehicle and partially dragged for a short distance. Ex. 4.

In the course of the stop at issue here, Officer Rukamp quickly learned that Bradshaw was not the owner of the vehicle, and the registration had expired in 2022. Bradshaw told Officer Rukamp that the vehicle was owned by his boss, Jon Gaffner, who owned Jon's Sport Shop, and that Gaffner allowed Bradshaw to use it for work. Bradshaw told Officer Rukamp he had just left Gaffner's shop, where he also lived, and was in the process of going to get gas. After running his name on his squad computer, Officer Rukamp explained that Department of Transportation records showed Bradshaw's address was in Chilton, and his driver's license had been expired since 2023 and was currently suspended for failure to pay a forfeiture.

After briefly discussing whether Bradshaw could call someone to pick him up, Officer Rukamp asked Bradshaw if there was anything in the vehicle that he needed to be aware of, such as "drugs, drug paraphernalia, weapons, anything like that" and instructed him not to reach for anything. Bradshaw responded, "No, I got empty carts in the front." Ex. 7a at 13:07.[*] Based on his training and experience, Officer Rukamp understood carts to be THC or marijuana cartridges to which a battery would be attached to activate the substance. Dkt. No. 24 at 9:05–13. At that point, Officer Rukamp instructed Bradshaw to get out of the vehicle. Bradshaw asked if he could

---

[*] Exhibit 7a is a transcript of Officer Rukamp's bodycam recording of his interaction with Bradshaw computer-generated by Justice Text, an AI-powered platform. Per agreement of the parties, the transcript was received into evidence but was inadvertently marked as Exhibit 7. That number had already been used, so the court has redesignated the transcript as Exhibit 7a. The record reflects the same problem with Exhibit 2. The government pre-marked the bodycam recording as Exhibit 2 and at the hearing, Officer Rukamp's report was marked as Exhibit 2. Accordingly, the court has redesignated Officer Rukamp's report as Exhibit 2a. Other exhibits bear the same number but are distinguishable as Defendant's or Government's exhibits. To avoid such confusion in the future, the parties are encouraged to consult with the clerk before marking their exhibits.

put his shoes on first, but Officer Rukamp told him he would get his shoes for him; he didn't want Bradshaw "digging through the car, cuz I don't know what's all in there." Ex. 7a at 13:21. Bradshaw then asked, "Why am I being snatched out the car?" Officer Rukamp responded that he could not drive with a suspended driver's license, the vehicle could not be driven in its current condition, and Bradshaw had admitted he had "THC cartridges in the vehicle." *Id.* at 13:36–13:43. Bradshaw pointed out, "They are empty," but Officer Rukamp explained, "Whether they're empty or not, . . . it's still drugs or drug paraphernalia." Officer Rukamp continued, "It doesn't mean you're gonna get in trouble, right. But it does give me probable cause to search the vehicle." *Id.* at 13:45–13:54.

By that time, two other officers, Dahms and Atkinson, had arrived as backup. Officer Rukamp began his search of the vehicle in the front driver's seat area. In addition to the "carts" that were in the cupholder (one of which was not completely empty), he found a small plastic container with what later proved to be methamphetamine residue under the accelerator and a loaded Ruger 9 mm semi-automatic pistol in a holster underneath the driver's seat. Upon discovery of the firearm, Officer Rukamp immediately placed Bradshaw under arrest and had him handcuffed. While Officer Dahms helped Officer Rukamp complete the search of the vehicle, Officer Atkinson placed Bradshaw in his squad car.

Upon resuming the search, Officers Rukamp and Dahms found two methamphetamine pipes (one in the center console and the other between the driver's seat and the center console), an electric stun gun, 9-millimeter bullets, gem baggies with white residue, a small baggie with 1.7 grams of what a field test indicated was methamphetamine, 17 knives of various sorts, and other items of drug paraphernalia, including a "wooden dugout or a one hitter" which Officer Rukamp described as "a wooden device that on one portion, conceals marijuana, and the other portion

4

contains a one hitter metal pipe." There was apparently no marijuana in the device, and the pipe was missing. Ex. 2a at 8.

In his motion to suppress, Bradshaw argues that Officer Rukamp did not have probable cause to conduct a search of the vehicle. He disputes Rukamp's claim that there was an odor of marijuana emanating from the vehicle and denies that he ever admitting having marijuana or THC cartridges in the vehicle. Dkt. No. 11 at 4. On cross-examination, counsel for Bradshaw emphasized that although Officer Rukamp had stated in his report that he had confronted Bradshaw at the scene with the fact that he had detected the odor of marijuana coming from the vehicle and that Bradshaw had admitted "marijuana products or THC cartridges being in the vehicle," no such statements could be heard in the bodycam recording. Exs. 2 & 2a. While Officer Rukamp did state in his brief incident report (Ex. 1), his full report (Ex. 2a), and in the Probable Cause Statement filed with the court (Ex. 3) that he had detected the odor of marijuana emanating from the vehicle immediately after stopping the vehicle, he never confronted Bradshaw with that fact. Because his report said he did, counsel suggested Officer Rukamp's testimony about detecting the odor of marijuana immediately upon approaching the vehicle was not credible. Counsel also pointed out that while Bradshaw admitted he had "carts" in the vehicle, he never described them as "THC cartridges" or "marijuana products."

The question also arose at the hearing as to whether "carts" could give off an odor of raw marijuana. Officer Rukamp testified that they could. Dkt. No. 24 at 68:18–20. Because that issue seemed to differ significantly from the dispute the parties had focused on in their pre-hearing filings, the court offered to hold open the record to allow the defense to supplement the record with evidence bearing on that issue. On February 27, 2025, the defense filed the affidavit of April Reinerio, an investigator for Federal Defender Services of Wisconsin, in which Ms. Reinerio

5

recounted that on February 26, 2025, she had met with the lead case agent in the federal case against Bradshaw for the purpose of inspecting the "carts" seized from the cupholder in the vehicle Bradshaw was driving in the early morning hours of November 24, 2024. Ms. Reinerio states that when the bag containing the "carts" was opened, she detected no smell of marijuana, either burnt or raw. Even when the "carts" were held to her nostrils, she said there was no odor of marijuana. Ms. Reinerio further states that she then went to a vape shop and a smoke shop in Green Bay and was shown cartridges that looked similar to those seized from the vehicle Bradshaw was driving on November 24, 2025. When she likewise brought those to her nostrils, she again detected no odor of marijuana, whether burnt or raw. Dkt. No. 17-1, Ex. 7 ¶¶ 4–12.

      The government responded, requesting that the motion to suppress be denied based on the uncontroverted testimony of Officer Rukamp that he did smell marijuana, or in the alternative, that the court schedule an additional hearing where the government would produce brief rebuttal evidence. Dkt. No. 18. The court scheduled the hearing for April 17, 2025, but before the case was called, the parties met in chambers and advised the court that neither intended to introduce further evidence. The government chose not to dispute the defense's contention that "carts" do not give off an odor of marijuana. Whatever the origin of the odor, the government argued that the testimony of Officer Rukamp was undisputed and unequivocal—he immediately detected the odor of raw marijuana coming from vehicle when he first approached it in the early morning hours of November 24, 2025. The defense, on the other hand, argued that the fact that the "carts" could not account for the odor and no leafy or other form of marijuana was found in the vehicle, together with Officer Rukamp's inconsistent statements, warranted the finding that his testimony about the odor of marijuana was not credible. Absent credible evidence that Officer Rukamp could smell

marijuana, the defense contends, probable cause was lacking and Bradshaw's motion to suppress should be granted.

## II. Analysis

The Fourth Amendment offers constitutional protection against unreasonable searches and seizures by agents of the government. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Warrantless searches are presumptively unreasonable, subject to particular exceptions that are "specifically established and well-delineated." *Katz v. United States*, 389 U.S. 347, 357 (1967). It is the government's burden to prove by a preponderance of the evidence that a warrantless search or seizure fits within a recognized exception. *United States v. Richards*, 741 F.3d 843, 847–48 (7th Cir. 2014) ("The government must prove by a preponderance of evidence that consent was freely and voluntarily given.").

As noted above, Bradshaw does not challenge Officer Rukamp's initial stop of the vehicle he was driving in the early morning hours of November 24, 2024. Dkt. No. 11 at 1 ("While Bradshaw takes no issue with the stop, . . . ."). His claim is that Officer Rukamp lacked probable cause to conduct a search of the vehicle under the circumstances he confronted. *Id.* Absent probable cause, Bradshaw argues that the search is constitutionally invalid and the evidence obtained as a result must be suppressed.

It is, of course, well-established that police may lawfully stop a vehicle for routine traffic violations. While a routine traffic stop does constitute a seizure within the meaning of the Fourth Amendment, "the usual traffic stop is more analogous to a so-called '*Terry* stop,' . . . than a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Thus, a routine traffic stop by itself does not authorize police to conduct a search of the vehicle unless the officer has a reasonable suspicion that the driver is dangerous and might access the

7

vehicle to gain immediate control of weapons. *Arizona v. Gant*, 556 U.S. 332, 352 (2009) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). Nor may a law enforcement officer prolong a stop for a routine traffic violation in the hope of establishing probable cause for a search. "A [stop] justified only by a police-observed traffic violation 'becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (quoting *Illinois v. Carballes*, 543 U.S. 405, 407 (2005)).

Under the automobile exception to the search warrant requirement, however, a law enforcement officer may also conduct a search of a vehicle if he has probable cause to believe it contains evidence of a crime. *United States v. Ross*, 456 U.S. 798, 807–09 (1982); *Carroll v. United States*, 267 U.S. 132, 149, 153–56 (1925). "Probable cause to search a vehicle exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The test is an objective one and is not based on the good faith of the officer. As the Court emphasized in *Beck v. Ohio*,

> We may assume that the officers acted in good faith in arresting the petitioner. But good faith on the part of the arresting officers is not enough. . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers, and effects, only in the discretion of the police.

379 U.S. 89, 97 (1964) (internal quotations and citations omitted).

In this case, Officer Rukamp testified that upon his initial approach to the vehicle, he immediately detected the unmistakable odor of marijuana. If that is true, then there is no dispute that probable cause to search the vehicle existed. Citing *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006), both parties acknowledge that the smell of marijuana gives rise to probable

8

Case 1:24-cr-00240-WCG   Filed 05/20/25   Page 8 of 13   Document 25

cause for a warrantless search of a vehicle. *See also United States v. Wimbush*, 337 F.3d 947, 950–51 (7th Cir. 2003) (smell of marijuana gave rise to probable cause for warrantless search of vehicle revealing marijuana in passenger compartment). The government contends that the officer's testimony alone is sufficient to support a finding that the search was lawful.

Bradshaw challenges the credibility of Officer Rukamp, claiming that the inconsistencies between his report and his bodycam recording offer substantial reasons for rejecting his claim that he detected the odor of marijuana emanating from the open window of the vehicle immediately upon his approach. Bradshaw notes that Officer Rukamp never confronted him about the smell of marijuana, even though he stated in his report that he did. Bradshaw also contends that Officer Rukamp falsely stated that Bradshaw admitted to having marijuana or THC cartridges in the vehicle, whereas the bodycam contains no such admission. He notes that Officer Rukamp did not report that he smelled marijuana over the radio and neither of the back-up officers who arrived at the scene prior to the search reported any odor of marijuana. Finally, Bradshaw points to the fact that no marijuana was found in the thorough search of the vehicle. This fact, together with the evidence he offered indicating that the "carts" found in the front seat cupholder could not have given off such an odor, Bradshaw contends, raise serious questions as to the credibility of Officer Rukamp. For all of these reasons, Bradshaw argues that Officer Rukamp's claim that he detected the unmistakable odor of marijuana emanating from the vehicle immediately upon his approach should be rejected and his motion to suppress should be granted.

In opposing Bradshaw's motion, the government emphasizes that Officer Rukamp is an experienced patrol officer with over eight years of experience, including four as a Field Training Officer for new recruits. Through his experience and training, he knows what marijuana smells like and he clearly and unequivocally testified that he detected the unmistakable odor of marijuana

emanating from the vehicle Bradshaw was driving when he first approached it, a fact he recounted several times in his reports and the probable cause statement he filed with the court. The government also notes that Officer Rukamp's explanation as to why he did not immediately confront Bradshaw about the marijuana odor he claimed to detect was reasonable, given his prior experience of having a suspect flee and endanger others when he did convey such information immediately upon stopping him. And Officer Rukamp's admittedly erroneous statement in his narrative report which was written several hours after the stop is at least as consistent with an innocent mistake, as he testified it was, as it is to an outright lie. Likewise, Officer Rukamp's statement that Bradshaw admitted having THC cartridges, taken in context, was consistent with his understanding that the term "carts" means THC cartridges and Bradshaw's response to his explanation for why he was going to search the vehicle. In explaining that he believed he had probable cause to search the vehicle, Officer Rukamp told Bradshaw that he had admitted having THC cartridges in the vehicle. Bradshaw did not deny that the "carts" were THC cartridges. Instead, he claimed they were empty and was silent when Officer Rukamp explained that, empty or not, they provided probable cause for the search. Under these circumstances, one could view Bradshaw's response as at least a tacit admission that the cartridges contained THC. This "admission," by itself, the government suggests, provided probable cause for the search regardless of whether the court credits Officer Rukamp's testimony that he immediately detected the odor of marijuana upon his initial approach of the vehicle.

The problem with Bradshaw's alleged "admission" about the "THC carts," however, even assuming it is enough to establish probable cause, is that it came after Officer Rukamp, by his own admission, had deliberately prolonged the stop based on his belief that the odor of marijuana he encountered upon his initial approach of the vehicle gave him probable cause to search. When

asked what it meant to him when he immediately smelled the odor of marijuana upon stopping the vehicle, Officer Rukamp responded: "That immediately brought to my attention that I would be conducting a probable cause search of the motor vehicle because of the odor of marijuana." Dkt. No. 24 at 8:07–11. The fact that he believed he had probable cause to search the vehicle, Officer Rukamp explained,

> allows me to slow things down, do things on my own time, allow me to do some of the extra research to [see] if he had a history of this kind of stuff, look up if he has any open cases, [is] on probation, different stuff like that. So it allows me to slow it down. At some point, I'm going to get additional officers to respond to my location to assist me in conducting the search or hanging out with the defendant.

*Id.* at 10:13–22. As he testified on cross-examination, Officer Rukamp was "just buying time until other officers got there to proceed with the traffic stop." *Id.* at 49:06–08. It wasn't until after he extended the traffic stop that Officer Rukamp asked Bradshaw about drugs or weapons in the car and Bradshaw responded with the alleged admission that he had THC cartridges. As Officer Rukamp explained, "Up until this point in a normal traffic stop, I can't ask those questions without some sort of reason to extend the traffic stop. And at that point, I have extended the traffic stop because I have the ability to conduct a probable cause search of the motor vehicle." *Id.* at 15:15–19.

The government correctly observes that Officer Rukamp was mistaken in thinking that he could not ask the question about weapons or drugs without extending the traffic stop. The court held in *United States v. Goodwill* that officers conducting routine traffic stops may ask unrelated questions of the occupants of the vehicle as long as they do not prolong the stop. 24 F.4th 612, 616–17 (7th Cir. 2022). But because Officer Rukamp's question and Bradshaw's response came after Officer Rukamp, by his own admission, had already prolonged the stop, the court cannot consider that evidence in deciding whether there was probable cause for the search as an initial

11

matter. The court is limited to determining whether Officer Rukamp's testimony that he smelled marijuana upon first approaching the vehicle was by itself enough to satisfy the government's burden of proving probable cause to search. The court concludes it does not.

This is not to say that Officer Rukamp was lying. The issue before the court is not whether the defense has proved that the officer lied; the issue is whether the government has met its burden of proof. In granting Bradshaw's motion, the court concludes only that Officer Rukamp's testimony lacks the kind of corroboration the court finds is needed under the circumstances of this case to carry the government's burden of proof. The primary difficulty with the government's position is that there is no evidence that anything in the vehicle could have produced the unmistakable odor of raw marijuana the officer said he smelled. Officer Rukamp testified that THC cartridges can give off the odor of raw marijuana, but his testimony lacked any foundation. Dkt. No. 24 at 68:18–20. When both parties were given the opportunity to introduce additional evidence on that issue, Bradshaw offered evidence suggesting that the cartridges could not give off such an odor, but the government elected not to dispute the point, choosing to rely entirely upon Officer Rukamp's testimony that, whatever the source, he noticed the unmistakable odor of raw marijuana immediately upon approaching the vehicle. Based on this record, however, the court is not satisfied that THC cartridges could give off an odor of raw marijuana and no other source has been identified.

It is perhaps conceivable that the smell of raw marijuana could linger on for some period of time after it is removed from a vehicle. But there was no evidence presented or argument made that this would account for the smell Officer Rukamp claims he detected in this case. There is no suggestion that Bradshaw or anyone else had previously transported marijuana in the vehicle, nor was there any evidence as to whether and for how long the odor of marijuana might linger. *Cf.*

*United States v. Harris*, No. 2:20-cr-00679, 2023 WL 5425395, at *2, 7 (D.N.J. Aug. 23, 2023) (denying motion to suppress automobile search based on smell of marijuana, notwithstanding finding only small amount (a little more than half a gram) found in smell-proof, mylar pocket, rolled up in jacket pocket inside of trunk, in reliance on officers' testimony that smell of marijuana can linger on clothing and other items, which was corroborated by defense expert's testimony and defendant's own statement that he had just finished smoking). Absent such evidence or argument, it would be improper for the court to speculate as to possible sources of the odor Officer Rukamp claims to have smelled.

In sum, the court finds that the government has failed to meet its burden of proving the warrantless search was supported by probable cause. Bradshaw's motion to suppress is therefore granted. The clerk is directed to place this matter on the court's calendar for a telephone conference to address further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of May, 2025.

William C. Griesbach
United States District Judge